RECEIVED
IN ALEXANDRIA, LA.
MAY - 8 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DERRICK L. BROWN | CIVIL ACTION NO. 11-1572 |
| VERSUS | JUDGE TRIMBLE |
| PATRICK R. DONAHOE | MAGISTRATE JUDGE KIRK |

### MEMORANDUM RULING

Before the court is a motion for summary judgment by defendant Patrick R. Donahoe ("Donahoe") seeking dismissal of all claims by plaintiff against him with prejudice under Fed. R. Civ. P. 12(b)(6) and 56(c).[1] For the reasons expressed below, the court finds that Donahoe's motion should be GRANTED in full.

I. **BACKGROUND**

Plaintiff Derrick L. Brown ("Brown" or "Plaintiff") was hired as a "transitional employee" at the U.S. Postal Service ("USPS")'s South Park station in Alexandria, Louisiana on or about May 23, 2009. As a transitional employee, plaintiff's contract of employment was for a temporary period not to exceed 360 calendar days per contract. A transitional employee may be rehired for an additional term, but such reappointment is solely at the discretion of USPS. A transitional employee may be terminated before the end of his contract, but only for cause or for lack of available work. Early terminations are subject to union grievance and arbitration procedure.

---

[1] R. 11.

1

On or about May 14, 2010, Brown's employment with USPS was terminated.[2] In a letter, issued that day, USPS stated that the reason for his "separation" was "end of appointment."[3] Brown filed an EEO discrimination complaint on or about September 15, 2010, after informal attempts at claim resolution were unsatisfactory to him.[4] During the investigation prior to Brown's formal EEO complaint, it was discovered that his effective termination date, May 14, 2010 was two (2) days early and should have been May 16, 2010.[5] Brown was paid for the two additional days he was actually under contract.

Brown requested a hearing before an EEOC Administrative Judge, after which USPS filed a "Motion for Findings and Conclusions Without a Hearing."[6] EEOC Judge Graham entered judgment without hearing in the case on or about July 26, 2011 in favor of USPS based on her finding that Brown failed to present a prima facie case of racial discrimination or of retaliatory discharge.[7]

Brown filed the instant suit against USPS, through Donahoe, on August 29, 2011. Brown alleges that he was wrongfully terminated from employment with the U.S. Postal Service and that "wrongful paperwork" was placed in his personnel file.[8] Though his written allegations are not identical to the issues dealt with in Brown's prior EEOC ruling, it is clear to the court that his intention is to continue litigation claims of both discriminatory discharge and retaliatory discharge.

---

[2] R. 12 at p. 6.
[3] Id.
[4] Id. at Exhibit 7.
[5] Id. at p. 16 and 55, Question 11.
[6] R. 12 at Exhibit 12.
[7] R. 12 at Exhibit 12.
[8] R. 1 at p. 1.

## II.  APPLICABLE STANDARD

As amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[9]

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[10] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[11]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[12] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[13] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt"

---

[9] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).
[10] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[11] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[12] Fed. R. Civ. P. 56(c)(2).
[13] Fed. R. Civ. P. 56(c)(1).

as to the material facts.[14] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[15]

### III. ANALYSIS

Title VII provides that employers may not discharge an individual or otherwise discriminate against him with respect to his compensation, terms, conditions or privileges of employment based on, inter alia, the individual's race.[16] A plaintiff alleging violation of Title VII must prove his claim by either direct or circumstantial evidence.[17] In cases where only circumstantial evidence is presented in support of a Title VII claim, the court will employ the McDonnell Douglas[18] burden shifting framework in its analysis of the claim.[19]

Under the McDonnell Douglas framework, plaintiff must first establish a prima facie case of discriminatory discharge by demonstrating that: (1) he was a member of a protected class; (2) that he was subjected to an adverse employment action; (3) that he was qualified for the employment at issue; and (4) that he was treated less favorably than other similarly situated employees outside the protected class.[20]

In the instant case, it is uncontested that plaintiff, an African-American, is a member of a protected class and, therefore, has successfully demonstrated the first element of his prima facie case. Although it was not argued by the parties, we also find that plaintiff has successfully

---

[14] Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 477 U.S. 242 (1986).
[15] Id.
[16] 42 U.S.C. § 2000e – 2(a)(1).
[17] Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001).
[18] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
[19] Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007); Rachid v. Jack In The Box, Inc., 376 F.3d 312 (5th Cir. 2004).
[20] Lee v. Conecuh County Bd. of Ed., 634 F.2d 959 (5th Cir. 1981); Ramirez v. Sloss, 615 F.2d, 163, 169 (5th Cir. 1980) citing McDonnell Douglas, 411 U.S. at 802.

demonstrated the element of an adverse employment action, in that he was not rehired at the expiration of his temporary contract.[21]

Donahoe asserts that plaintiff fails to establish the third element of his prima facie case regarding plaintiff's qualification for the employment at issue. Donahoe asserts that evidence before the court demonstrates that plaintiff failed to perform his work for USPS in a satisfactory manner, accruing substantial unapproved overtime hours. Evidence before the court supports Donahoe's argument in that employment records demonstrate that plaintiff claimed a substantial number of overtime hours.[22] Donahoe asserts that these hours cost USPS additional money in payroll, which constitutes an undesirable outcome for the employer.[23] Plaintiff's response alleges that Donahoe's records were inaccurate, reflecting a difference between "street time" and "office time." Plaintiff does not, however, specify what the exact discrepancy between these two time standards is and how that would impact the number of overtime hours he purports to have worked.

Construing the evidence in the light most favorable to the non-moving party, the court will assume that, because plaintiff was hired for the job at issue, he possessed the requisite skills and qualifications for such employment and, thus, has demonstrated the third element of his prima facie case of discrimination.

Plaintiff alleges that he was treated less favorably than other Caucasian transitional employees who also worked overtime hours and were involved, as he was, in vehicular accidents on the job. Plaintiff alleges, specifically, that fellow transitional employees Tabor and Morrison

---

[21] Auguster v. Vermillion Parish School Bd., 249 F.3d 400 (5th Cir. 2001) (teacher not rehired at expiration of his contract experienced an adverse employment action within meaning of Title VII).
[22] R. 12 at Exhibit 3.
[23] R. 11 at p. 4.

were treated more favorably because they both were rehired.[24] Donahoe does not dispute that both Tabor and Morrison remain employed with USPS. Accordingly, construing the facts in the way most favorable to Brown as the non-moving party, we find that plaintiff has successfully demonstrated the fourth and final element of his prima facie case of discrimination.

Under the McDonnell Douglas framework, the plaintiff's successful establishment of a prima facie case shifts the burden to the employer defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action.[25] Donahoe asserts that the decision not to rehire plaintiff was based solely on his inability to timely complete his assigned mail route, which resulted in what the USPS considered excessive overtime hours. An employee's performance is a legitimate, non-discriminatory reason for adverse employment action.[26] Accordingly, the court finds that Donahoe has articulated a legitimate, non-discriminatory reason for the decision not to rehire plaintiff as a transitional employee with the USPS.

Once an employer articulates a legitimate, non-discriminatory reason for an adverse employment action, the burden again shifts to plaintiff to demonstrate that the employer's proffered reason is merely pretext for impermissible discrimination.[27] As evidence of pretext, plaintiff asserts that employees Tabor and Morrison were similarly situated and remain employed with USPS, despite having accrued substantial overtime hours and having been in vehicular accidents on the job as proof that defendant's proffered excuse is pretext.

Donahoe responds by pointing out that, while both Tabor and Morrison did accrue overtime, plaintiff accrued substantially more overtime than either Tabor or Morrison. Donahoe

---

[24] R. 16 at p. 2
[25] Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398 (5th Cir. 1999); Whiting v. Jackson State Univ., 616 F.2d 116 (5th Cir. 1980).
[26] Strong v. University Healthcare System, LLC, 482 F.3d 802 (5th Cir. 2007); Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005)
[27] McCoy v. City of Shreveport, 492 F.3d 551 (5th Cir. 2007); Manning v. Chevron Chemical Co., LLC, 332 F.3d 874 (5th Cir. 2003).

6

offers employment records for Brown, Tabor and Morrison to substantiate this argument. Donahoe also asserts that vehicular accidents were not a factor in USPS's decision not to rehire plaintiff and, accordingly, are not properly considered herein.

The court has carefully reviewed these records, generated by the Delivery Operations Information System ("DOIS"). Exhibit 3 to Donahoe's motion contains DOIS records for Brown, showing a total of 274 work days of data, including the projected time for completion of a route and the actual time it took Brown to complete that route each work day. As depicted in Exhibit 3, Brown exceeded the projected time for completion of his route on approximately 248 of 274 reported work days. By comparison, Morrison exceeded the projected time for the completion of his route on approximately 41 of the 181 reported work days and Tabor exceeded the projected time for the completion of his work on approximately 105 of the 235 reported work days.[28]

Plaintiff's only response to this data is a self-serving and conclusory allegation that such data is "false."[29] As cited above, a plaintiff must actually demonstrate that an employer's proffered legitimate, non-discriminatory reason for an adverse employment action is pretext for impermissible discrimination. This can only be done by the allegation of particular facts which, if proven, would constitute a legitimate basis for a fact-finder to conclude that the employer's proffered explanation is pretext. Plaintiff's bare assertion that the records are false does not suffice.

Accordingly, the court finds that Donahoe has successfully demonstrated that the decision not to rehire plaintiff was based on plaintiff's own performance, as supported by employment records which are not legitimately disputed by plaintiff. We also find that plaintiff

---

[28] R. 19 at Exhibit 20.
[29] R. 16 at p. 1.

fails to demonstrate that his own job performance is merely pretext for some impermissible discriminatory animus in this case.

To the extent that plaintiff also alleges retaliatory discharge based on prior EEO complaints, plaintiff offers absolutely no evidence in support of this claim and, accordingly, Donahoe is entitled to summary judgment as to such claim.

To the extent that plaintiff purports to base an additional claim on the allegation that Donahoe caused a "bogus" letter to be added to his personnel file without his prior knowledge, plaintiff again fails to relate such action to any adverse employment action or to allege that this alleged act in any way caused his termination.

Finally, to the extent that plaintiff alleges that his contract was terminated early, it is undisputed that his employer recognized its mistake in dating the termination letter two (2) days early and, since then, has paid plaintiff for the additional two (2) days, thereby ensuring no prejudice to plaintiff in his separation from employment at the end of his contract.

## IV. CONCLUSION

For the reasons cited above, this court finds that defendant Donahoe is entitled to summary judgment as to plaintiff's claims of discrimination and retaliation under Title VII and that, accordingly, Donahoe's motion should be GRANTED in all respects and such claims should be denied and dismissed with prejudice. The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
May 8, 2012

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE